TRACY W. MOORE, PLAINTIFF-EMPLOYEE v. STANDARD MINERAL COMPANY DEFENDANT-EMPLOYER, AND CNA INSURANCE COMPANY, DEFENDANT-CARRIER

No. 9410IC652

(Filed 7 May 1996)

**Workers' Compensation § 260 (NCI4th)— silicosis—average weekly wage—52 weeks preceding diagnosis—appropriate period for determination**

Where plaintiff was exposed to silica dust from 16 March 1959 to 18 July 1960 and from 19 February 1963 to 19 May 1967, thereafter worked in a number of other jobs until becoming self employed in 1972 in the carpet and tile business, and was working in that business on 19 June 1991 when his silicosis was diagnosed, the Industrial Commission properly determined that compensation should be calculated based upon plaintiff's wages during the 52-week period immediately preceding the date of diagnosis rather than the 52-week period preceding his removal from the industry within which silicosis was contracted.

**Am Jur 2d, Workers' Compensation § 419.**

Appeal by defendants from Opinion and Award filed 1 March 1994 by the North Carolina Industrial Commission. Heard in the Court of Appeals 21 February 1995.

*Lore & McClearen, by R. James Lore, for plaintiff-appellee.*

*Young Moore Henderson & Alvis P.A., by Joseph W. Williford and Terryn D. Owens for defendant-appellants.*

MOORE v. STANDARD MINERAL CO.

[122 N.C. App. 375 (1996)]

JOHN, Judge.

Defendants appeal an Opinion and Award of the North Carolina Industrial Commission (the Commission), contending the Commission erred by basing plaintiff's compensation rate on wages earned "at the time he was first diagnosed with silicosis rather than when he was removed from the industry" which exposed him to the hazard. For the reasons set forth herein, we affirm the Commission.

Pertinent facts and procedural information are as follows: From 16 March 1959 to 18 July 1960 and from 19 February 1963 to 19 May 1967, claimant was exposed to silica dust while employed by defendant Standard Mineral Company (Standard). Plaintiff thereafter worked in a number of other jobs until becoming self-employed in 1972 in the carpet and tile business. He was engaged in this latter occupation on 17 February 1994, the date the matter *sub judice* was heard before the Commission. Plaintiff's silicosis was diagnosed 19 June 1991 and the diagnosis confirmed 19 February 1992.

Standard and its insurance carrier, defendant CNA Insurance Company, entered into an agreement with plaintiff pursuant to N.C.G.S. § 97-61.5(b) (1991) for payment of 104 weeks of workers' compensation benefits at the rate of $62.01 per week. The amount was calculated as sixty-six and two-thirds percent of plaintiff's average weekly wage of $93.02 (the amount earned with Standard), subject to a determination by the Commission as to whether the appropriate rate had been paid. Deputy Commissioner W. Joey Barnes subsequently ruled that plaintiff became disabled when diagnosed with silicosis, and that "[a]t the time of disablement, plaintiff's average weekly wage was $395.13," "yielding a compensation rate of $263.42."

Defendants appealed to the Full Commission which adopted *in toto* the findings and conclusions of the Deputy Commissioner. Defendants gave notice of appeal to this Court 4 April 1994.

The sole issue on appeal is whether the Commission properly determined the rate of compensation to be paid plaintiff. Defendants do not contest the diagnosis of silicosis and further admit responsibility for payment of compensation under G.S. 97-61.5(b). However, defendants contend certain findings of fact contained in the Commission's opinion are not supported by the evidence and further argue the Commission's legal conclusions are based upon "a misapprehension of the law," specifically G.S. § 97-61.5(b). We disagree.

**MOORE v. STANDARD MINERAL CO.**

[122 N.C. App. 375 (1996)]

The statute provides in pertinent part:

If the Industrial Commission finds . . . that the employee has either asbestosis or silicosis or if the parties enter into an agreement to the effect that the employee has silicosis or asbestosis, it shall by order remove the employee from any occupation which exposes him to the hazards of asbestosis or silicosis . . . ; provided, that if the employee is removed from the industry the employer shall pay or cause to be paid as in this subsection provided to the employee affected by such asbestosis or silicosis a weekly compensation equal to sixty-six and two-thirds percent (66 2/3%) of his average weekly wages before removal from the industry, but not more than the amount established annually to be effective October 1st as provided in G.S. 97-29 or less than thirty dollars ($30.00) a week, which compensation shall continue for a period of 104 weeks.

Defendants insist the foregoing mandates that the average weekly wage governing compensation is that which the employee was receiving "before removal from the industry" within which silicosis was contracted. Defendants point out that plaintiff "removed" himself from employment with Standard no later than May 1967.

Plaintiff focuses instead upon the phraseology "average weekly wage," defined in N.C.G.S. § 97-2(5) (1991) as follows:

"Average weekly wages" shall mean the earnings of the injured employee in the employment in which he was working at the time of the injury during the period of 52 weeks immediately preceding the date of the injury . . . .

The applicable "date of the injury" herein, plaintiff argues, citing *Wilder v. Amatex Corp.*, 314 N.C. 550, 557, 336 S.E.2d 66, 70 (1985), was the date his disease was diagnosed. Plaintiff therefore maintains compensation should be calculated based upon his wages "during the period of 52 weeks immediately preceding the date" of diagnosis. We find plaintiff's analysis the more persuasive.

Defendants' interpretation that plaintiff's rate of compensation should be based upon the wages he was earning at the time he "removed" himself from Standard ignores the context within which G.S. § 97-61.5 was adopted. Since 1935, the year the statute was originally enacted as N.C. Sess. Laws ch. 123, § 1, industrial workers exposed to the hazards of asbestos and silica dust have been required to undergo periodic medical examinations for the purpose of detect-

ing signs of occupational disease. Upon a diagnosis of asbestosis or silicosis, G.S. § 97-61.5 authorizes the Commission to order the afflicted worker "removed" from the hazardous industry.

Plaintiff contends, and we agree, that the foregoing monitoring and examination procedure manifests that the term "removal" as used by G.S. § 97-61.5 presumes medical diagnosis will occur *during* the hazardous employment. Thus, the language regarding "removal from the industry" has specific application only to occasions when the inspection program has identified victims of occupational disease who are thereafter "removed" from a hazardous industry by directive of the Commission. However, the phrase is inapposite to instances such as that *sub judice* wherein a claimant is diagnosed at some point *subsequent* to leaving hazardous employment. As defendants concede plaintiff is entitled to benefits under G.S. § 97-61.5(b), we therefore focus upon the term "average weekly wages" apart from the phrase "before removal from the industry" to determine the compensation rate, as contemplated by the statute, of a worker diagnosed with asbestosis or silicosis following *voluntary* departure from a hazardous industry.

The definition of "average weekly wages," found at G.S. § 97-2(5), utilizes the earnings of the employee "in the employment in which he was working at the time of the injury" to ascertain the proper benefit amount. The ultimate question, therefore, is what date constitutes "the time of the injury" for purposes of an award under G.S. § 97-61.5(b).

Two decisions of our Supreme Court lend guidance. First, *Wilder v. Amatex Corp.*, 314 N.C. 550, 560, 336 S.E.2d 66, 72 (1985), in discussing the date of accrual of the statute of limitations period for occupational disease claims, observes:

> [T]he legislature and the Court have recognized that exposure to disease-causing agents is not itself an injury. The body is daily bombarded by offending agents. Fortunately, it almost always is capable of defending itself against them and remains healthy until, in a few cases, the immune system fails and disease occurs. That, in the context of disease claims, constitutes the first injury. Although persons may have latent diseases of which they are unaware, it is not possible to say precisely when the disease first occurred in the body. The only possible point in time from which to measure the "first injury" in the context of a disease claim is when the disease is diagnosed.

In addition, in *Wood v. Stevens & Co.*, 297 N.C. 636, 256 S.E.2d 692 (1979), the Court was asked to decide whether the law of the year of diagnosis or the law of the year of last hazardous exposure applied to the workers' compensation claim of a woman suffering from byssinosis. The Court noted that

> [t]he long-standing rule in both this and other jurisdictions is that the right to compensation in cases of *accidental* injury is governed by the law in effect at the time of injury.

*Id.* at 644, 256 S.E.2d at 698, and also looked to N.C.G.S. § 97-52 (1991), which provides as follows:

> [d]isablement or death of an employee resulting from an occupational disease . . . shall be treated as the happening of an injury by accident within the meaning of the North Carolina Workers' Compensation Act . . . .

Ultimately, the Court ruled that the law in effect at the time of the claimant's disablement should apply, that being tantamount to the time of injury in the context of occupational disease claims. *Id.*

Moreover, this Court has determined that, for the purposes of G.S. § 97-61.5(b), a diagnosis of asbestosis "is the equivalent of a finding of actual disability." *Roberts v. Southeastern Magnesia and Asbestos Co.*, 61 N.C. App. 706, 710, 301 S.E.2d 742, 744 (1983). We perceive no distinction pertinent to the matter at hand between a diagnosis of asbestosis and that of silicosis. The Commission therefore properly calculated plaintiff's benefits under G.S. § 97-61.5(b) based upon wages earned in his employment "at the time of the injury," G.S. § 97-2(5), *i.e.*, the time of his diagnosis.

Our holding finds support in *Frady v. Groves Thread*, 56 N.C. App. 61, 286 S.E.2d 844 (1982), *aff'd*, 312 N.C. 316, 321 S.E.2d 835 (1984). In *Frady*, this Court stated, *inter alia*, that G.S. § 97-2(5) calls for benefits to be based upon wages earned in the employment "in which [the claimant] was working at the time of the injury," and that "the time of injury is the time of disability in the case of occupational disease." 56 N.C. App. at 67, 286 S.E.2d at 848; *but see Frady v. Groves Thread*, 312 N.C. 316, 318, 321 S.E.2d 835, 836 (1984) (decision of Court of Appeals "left undisturbed but should not be considered as having precedential value"). Moreover, courts in the majority of other jurisdictions have similarly held benefit amounts to be based upon workers' wage levels at the time of either diagnosis or disablement. 1B Arthur Larson & Lex K. Larson, *The Law of Workmen's*

*Compensation,* § 41.84(a) (1995); *see, e.g., Todd Shipyards Corp. v. Black,* 717 F.2d 1280, 1290 (9th Cir. 1983), *cert. denied,* 466 U.S. 937, 80 L. Ed. 2d 459 (1984); *Cote v. Combustion Engineering, Inc.,* 502 So.2d 500 (Fla. Dist. Ct. App., 1st Distr. 1987); *White v. Johns-Manville Sales Corp.,* 416 So.2d 327 (La. Ct. App., 5th Cir. 1982).

In sum, we hold that under the circumstances of the case *sub judice,* the Commission properly determined plaintiff's benefits under G.S. § 97-61.5(b) in accordance with the definition of "average weekly wages" set forth in G.S. § 97-(5), the "time of the injury" being the date plaintiff was diagnosed with silicosis. In so holding, we emphasize that the situation of a claimant no longer employed in any capacity at the time of diagnosis is not before us, and that legislative action to address such an instance may well be required to fulfill completely the intended purpose of compensating workers who have contracted occupational diseases. *See Roberts,* 61 N.C. App. at 710, 301 S.E.2d at 744 (partial purpose of G.S. § 97-61.5 to compensate employees for incurable nature of asbestosis).

Defendant also challenges certain of the Commission's findings relating to plaintiff's wages as being unsupported by evidence of record. This argument is unfounded.

Findings of fact by the Commission are conclusive as long as supported by any competent evidence. *Pittman v. Thomas & Howard,* 122 N.C. App. 124, 468 S.E.2d 283 (1996). Upon examination of the record, we find competent evidence in the form of plaintiff's income tax returns for 1990 and 1991 which support the Commission's finding that plaintiff's "average weekly wage was $395.13."

Affirmed.

Judges JOHNSON and MARTIN, Mark D. concur.