***********
The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Jones. The appealing party has not shown good grounds to reconsider the evidence; receive further evidence; rehear the parties or their representatives; or amend the prior Opinion and Award except with the deletion of the finding of fact concerning increased risk and the modification of the findings concerning exposure as well as minor modifications.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner and in a Pre-Trial Agreement as
 STIPULATIONS
1. The parties are bound by and subject to the North Carolina Workers' Compensation Act.
2. At all relevant times, an employment relationship existed between plaintiff and defendant-employer.
3. Wausau Insurance Company is the carrier on risk.
4. From August 21, 1990 through December 28, 1990, plaintiff was employed by defendant-employer to work at the Duke McGuire Nuclear Power Plant.
5. From April 25, 1990 through June 18, 1990 and from February 4, 1991 through April 11, 1991, plaintiff was employed by defendant-employer at the Oconee Nuclear Power Plant.
6. An Itemized Statement of Earnings from the Social Security Administration was stipulated into evidence as Section 1 of Stipulated Exhibit 1.
7. Plaintiff's Personnel File from Great Barrier Insulation was stipulated into evidence as Section 2 of Stipulated Exhibit 1.
8. Plaintiff's Medical Records from Greenville Hospital System, Thomas Parrish, M.D., Carolina Cardiology Consultants, Easley Baptist Hospital, Powdersville Family Practice and Radiology Consultants were stipulated into evidence as Sections 3 through 8 of Stipulated Exhibit 1.
9. The issues are: (i) whether plaintiff contracted an occupational disease, asbestosis, arising out of and in the course of his employment with defendant-employer; (ii) what is plaintiff's average weekly wage; (iii) what compensation, if any is due plaintiff; (iv) whether plaintiff is entitled to attorneys fees pursuant to N.C.G.S. § 97-88.1?
10. The depositions of Eric D. Alpert, M.D., Albert F. Curseen, M.D., Dennis Darcey, M.D., Frederick M. Dula, Jr., M.D., and Thomas Parrish, Jr., M.D. are a part of the evidentiary record in this matter.
 EVIDENTIARY RULINGS
The objections raised in the depositions of Eric D. Alpert, M.D., Albert F. Curseen, M.D., Dennis Darcey, M.D., Frederick M. Dula, Jr., M.D., and Thomas Parrish, Jr., M.D., are OVERRULED.
 ***********
Based upon the evidence of record and the findings of fact found by the Deputy Commissioner, the Full Commission finds as follows
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, plaintiff was a fifty (50) year old with a seventh (7th) grade education. Plaintiff completed his GED while in the military.
2. After leaving school, plaintiff worked in a number of jobs until he joined the United States Navy in 1958. While in the Navy, plaintiff was a boiler tender. This job required plaintiff to perform maintenance on boilers, piping and valves aboard the USS Plymouth Rock. The pipe insulation, boiler insulation and valve insulation as well as the gloves plaintiff used on a continual basis contained asbestos.
3. Plaintiff was exposed everyday to asbestos while employed by the United States Navy until he left the service on July 12, 1961.
4. After leaving the service, plaintiff worked at a variety of jobs. In 1967, plaintiff returned to work as an insulator and continued in the insulation business for the rest of his working career.
5. Plaintiff ran a restaurant for a few years in the late 1980s. Outside of this employment commitment, plaintiff was employed in the insulation business.
6. Plaintiff first worked as an insulator for Industrial Maintenance and Mechanical Services. Much of the insulation plaintiff used during the approximate one (1) year of employment with Industrial Maintenance was asbestos insulation. Fiberglass insulation was used on water lines and polystyrene was used on chill water lines.
7. Plaintiff became employed with Southern Insulation after leaving Industrial Maintenance. While working for Southern Insulation, plaintiff continued to use asbestos insulating products.
Plaintiff was employed by Southern Insulation for approximately two (2) years.
Thereafter, plaintiff became employed by Daniels for approximately a year and a half. Plaintiff continued to insulate with asbestos insulation.
10. In 1973, plaintiff went to work with Piedmont Insulators. During the time plaintiff was involved in the insulation business from 1967 until 1973, plaintiff installed materials that contained asbestos.
11. After the installation of new asbestos products ceased, plaintiff and other installers continued to be exposed to asbestos as a result of removing old asbestos insulation.
12. During the 1970s and the 1980s, plaintiff worked for a variety of insulating companies.
13. In March 1990, plaintiff went to work for defendant-employer at the Duke Power Oconee Nuclear Plant outside Pickens, South Carolina. While employed by defendant-employer, plaintiff received an identification card showing he had received training regarding the removal of asbestos insulation. While at Oconee, plaintiff's main job was stripping off old insulation, making pads and putting the insulation back in place.
14. Although the contract between Duke Power and Great Barrier did not specifically call for the removal of asbestos insulation, plaintiff frequently came in contact with old asbestos insulation during the removal project.
15. At Oconee, there were random samples taken approximately every ten (10) feet to determine whether the insulation contained asbestos. Frequently, much of the asbestos insulation that was being removed had not actually been tested because pipe insulation at Oconee was covered with either canvas or metal jackets. It was impossible to tell the type of insulation underneath the covering until the covering was removed. If there was a metal jacket, plaintiff clipped the bands holding the metal jacket together and peeled the jacket back. Sometimes, plaintiff had to remove screws from the metal jackets. Underneath the jackets, the insulation was tied with a wire. Plaintiff clipped the wire and removed the insulation. Some of the insulation would stick on the pipes and plaintiff would knock the insulation off with a hammer.
16. The process of removing metal or canvas jackets caused the release of a great deal of dust. The insulation that was being removed was old and had dried. The dust that was generated as a result of the removal fell directly on the plaintiff at the time he was removing a jacket, as most of his work was performed over his head.
17. While working at the Oconee facility and after removing the jackets from insulation, plaintiff frequently found what he believed to be asbestos. Due to plaintiff's years of employment in the Navy and as an insulator, he had experience with asbestos and had knowledge of methods to distinguish asbestos insulation from other insulation. When plaintiff found what he believed to be asbestos insulation, plaintiff broke off a piece and felt it, looked at it and held a cigarette lighter to it. If plaintiff was confident that the insulation contained asbestos, he reported his findings to his supervisor and then worked elsewhere. However, in the process of removing the jackets and before determining that the insulation contained asbestos, plaintiff was exposed to asbestos.
18. Plaintiff found insulation identified as asbestos at least two (2) or three (3) times a week while he was working at Oconee.
19. After plaintiff left the Oconee facility, plaintiff was assigned to the McGuire Nuclear Plant near Charlotte. While at the McGuire Plant, plaintiff spent much of his time stripping insulation off valves, pipes and the turbine.
20. Duke Power and Great Barrier believed that the McGuire facility was asbestos-free. As a result, no precautions were ever taken when insulation was being removed.
21. Plaintiff found insulation he believed contained asbestos but was told that the facility was asbestos-free and that he should continue with his work.
22. As confirmed by plaintiff and his supervisor, Paul Whelchel, plaintiff performed three (3) jobs at the McGuire facility that exposed him to asbestos. John Nettles testified that there was asbestos present in the McGuire plant, but that there was less exposure since most asbestos had been removed prior to 1994 calling into question whether plaintiff was exposed for thirty (30) days during a seven (7) month period. However, there is a memo dated June 28, 1995 from Mr. Nettles' predecessor stating that the sampling process which was completed found many materials containing asbestos at the McGuire facility including valve packing and gaskets, generator windings, roof flashing and masic, transite siding, pipe insulation, valve insulation, paint insulation. Greater weight is given to the testimony of plaintiff and Mr. Whelchel than to that of Mr. Nettles.
23. The first job at the McGuire plant which exposed plaintiff to asbestos was removing insulation when vapor barriers around the valves were broken. The vapor barriers had aluminum on one side and FSK paper on the other and a powdery substance inside. A great deal of dust was released during this job. A later sampling by Duke Power proved the internal powder contained 50 to 65% chrysotile asbestos.
24. Plaintiff also removed a large amount of insulation with a silver-looking paint on it. The paint was dried and cracked and while plaintiff pried the insulation, the paint flaked. Plaintiff and other workers walked through the chips until they were cleaned up usually at the end of the shift. A later inspection determined the paint contained 2 to 4% asbestos.
25. Plaintiff also worked stripping insulation from underneath the turbine. This project lasted approximately four (4) weeks. The turbine was wrapped in a cloth. Plaintiff tore some of the cloth away and others were tearing it off other areas while plaintiff was working. A later sampling of the cloth indicated chrysotile asbestos was contained within the material.
26. At the completion of plaintiff's employment at the McGuire facility, plaintiff worked for defendant-employer at the River Bend and Marshall Steam Stations. Plaintiff does not contend that he was exposed to asbestos at either of these positions.
27. Plaintiff worked for a number of other companies after he left his employment with Great Barrier Insulation on April 11, 1991.
28. Plaintiff was not exposed to asbestos at any of the later job sites after leaving Great Barrier Insulation.
29. Plaintiff was initially diagnosed with asbestosis by Dennis Darcey, M.D., on July 18, 1997. Dr. Darcey indicated plaintiff had a clinical diagnosis of asbestosis and pleural changes consistent with asbestos exposure. Albert Curseen, M.D., confirmed that plaintiff has asbestosis.
30. Douglas Kelling, M.D., performed an Advisory Medical Panel examination of plaintiff. Dr. Kelling determined plaintiff had both asbestosis and asbestos related pleural disease.
31. Dr. Kelling and Dr. Curseen determined plaintiff has a Class IV breathing impairment.
32. Plaintiff now requires oxygen at least part of the day and is extremely limited in terms of activities he can perform.
33. Thomas Parrish, M.D., has determined plaintiff is permanently and totally disabled as result of his asbestosis.
34. While working for defendant-employer, plaintiff was exposed to the hazards of asbestos for more than thirty (30) days over seven (7) consecutive months.
35. Plaintiff was not diagnosed with asbestosis until after he was no longer employed with defendant-employer. Plaintiff timely notified defendant-employer of his occupational disease of asbestosis by filing a Form 18B on April 21, 1998.
36. Plaintiff was last injuriously exposed to the hazards of asbestosis while employed by defendant-employer.
37. As a result of his asbestosis, plaintiff has not worked in any capacity and has been incapable of earning wages since March 18, 1999 after his last day of work on March 17, 1999 with the Stella Group.
38. Defendants have defended this matter on reasonable grounds.
39. Basing plaintiff's average weekly wage on his last year of employment with the Stella Group prior to his disability from asbestosis is fair and just to both parties and yields a weekly compensation rate of $384.64.
 ***********
Based on the foregoing findings of fact and conclusions of law, the Full Commission concludes as follows
 CONCLUSIONS OF LAW
1. Plaintiff has contracted occupational asbestosis. Furthermore, since plaintiff was exposed to asbestos dust for as much as thirty (30) working days or parts thereof within seven (7) consecutive months while employed by defendant-employer, plaintiff was last injuriously exposed to the hazards of asbestosis during his employment with defendant-employer. Consequently, defendants are liable. N.C.G.S. §§ 97-53(24); 97-57.
2. Basing plaintiff's average weekly wage upon his last salary while employed with the Stella Group in 1999, the year prior to his disability from asbestosis, is fair and just to both parties. Plaintiff's earnings for that year entitle him to compensation at a weekly rate of $384.64.Moore v. Standard Mineral Co., 122 N.C. App. 375, 469 S.E.2d 594 (1996).
3. Subject to a reasonable attorney's fee, plaintiff is entitled to total disability compensation beginning March 18, 1999 at a rate of $384.64 per week until plaintiff returns to work at the same or greater average weekly wage or until further order of the Commission. N.C.G.S. § 97-29.
4. Plaintiff is entitled to reasonably necessary medical treatment as a result of his contraction of asbestosis including future medical monitoring for medication and other medical needs for so long as such treatment tends to effect a cure, provide relief or lessen the period of plaintiff's disability. N.C.G.S. § 97-59.
5. Plaintiff is not entitled to an assessment of attorney's fees against defendants, as defendants have defended this matter on reasonable grounds. N.C.G.S. § 97-88.1.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following
 AWARD
1. For plaintiff's compensable occupational disease, defendants shall pay to plaintiff total disability compensation beginning March 18, 1999 at a rate of $384.64 per week until plaintiff returns to work at the same or greater average weekly wage or until further order of the Commission. Said amount is subject to a reasonable attorney's fee approved in Paragraph 3.
2. Defendants shall pay all reasonably necessary medical expenses for incurred by plaintiff as a result of the compensable occupational disease for treatment which tends to effect a cure, provide relief or lessen the period of plaintiff's disability.
3. A reasonable attorney's fee of twenty-five (25%) percent of compensation due plaintiff under Paragraph 1 of this AWARD is approved for plaintiff's counsel and shall be paid as follows: twenty-five (25%) percent of the sum that has accrued to date shall be deducted from the sum owed plaintiff and paid directly to plaintiff's counsel. In regards to all future compensation, plaintiff's counsel shall receive every fourth check.
4. Defendants shall pay the costs.
This the ___ day of March 2002.
 S/_______________ DIANNE C. SELLERS COMMISSIONER
CONCURRING:
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
 S/_______________ CHRISTOPHER SCOTT COMMISSIONER