For the reasons stated below, I respectfully disagree with the majority decision.
 NECESSARY ELEMENTS FOR ORDER OF REMOVAL/104 WEEKS
Removal from employment under § 97-61.5 requires a finding of at least two conditions: (1) that the plaintiff has a compensable claim for asbestosis; and (2) that plaintiff is currently employed (at the time of the "hearing after first [panel] examination") in a position that causes harmful exposure to asbestos. See Austin v. Continental General Tire,141 N.C. App. 397, 415, 540 S.E.2d 824, 835 (2000) (J. Greene, dissenting), reversed and adopting dissenting opinion, 354 N.C. 334,553 S.E.2d 680 (2001); Moore v. Standard Mineral Company,122 N.C. App. 375, 469 S.E.2d 594 (1996). On the issue of removal, §97-61.5(b) specifically provides:
 "If the Industrial Commission finds at the first hearing
that the employee has asbestosis or if the parties enter into an agreement to the fact that the employee has asbestosis, it shall by order remove the employee from any occupation which exposes him to the hazards of asbestosis"
[Emphasis added] Plaintiff has not met the first condition to establish the diagnosis of asbestosis as a consequence of his limited period of employment with defendant. Further, plaintiff has not met the second condition, and indeed suggests that his current occupation does notcurrently exposes him "to the hazards of asbestosis."[1] Moreover, the evidence is that plaintiff worked for defendant for less than a year in 1965-66, and had left defendant's employment long before his alleged diagnosis in 1997. Thus, plaintiff has not established that he is entitled to an order of removal from employment with Weyerhaeuser. Further, only an appropriate order of removal, that actually removes plaintiff from his current employment in the industry, triggers the payment of 104 weeks of benefits. See Clark v. ITT Grinnell,141 N.C. App. 417, 539 S.E.2d 369, remanded for reconsideration,354 N.C. 572, 558 S.E.2d 867 (2002); Austin, 141 N.C. App. at 415;Moore, supra (removal from industry by directive of Commission); N.C. GEN. STAT. § 97-61.5(b) (if employee is removed from industry).
The application of the statutory provision regarding removal and subsequent payment of 104 weeks has a practical purpose and historical significance. By way of an explanation, employees in a dusty trade are entitled to a dusty trade card only after passing a chest x-ray screening, and for as long as their yearly chest x-rays remain clear. Upon a finding of asbestosis after clinical examination (the first panel examination), the employee's dusty trade card is revoked, prohibiting his continued employment in the dusty trade industry. The diagnosis of asbestosis and evidence of current hazardous exposure to asbestos thereby trigger an order of removal and the second and third panel examinations during which time the 104 weeks of benefits is paid. The length of the 104-week period is significant in the statutory scheme of the panel examinations. A 52-week period exists between the first and second panel examinations and another 52-week period exists between the second and third panel examinations. This accounts for the 104 weeks of benefits which are provided as a "safety net" for an employee who is suddenly prohibited from further employment in the dusty trade industry where the employee is currently hazardously exposed and whose final disability determination will not be made until after the third panel examination. Although § 97-61.5 has now been extended by the courts to non-dusty trade employment, the same principles apply. The 104 weeks of benefits is intended to compensate the employee who suddenly is prohibited from continuing in his current employment because it exposes him to the hazards of asbestos. Thus, evidence of plaintiff's current exposure to the hazards of asbestos is a critical element to be established prior to an order of removal and payment of 104 weeks of benefits.
 PLAINTIFF HAS NOT ESTABLISHED ASBESTOSIS, LAST INJURIOUS EXPOSURE, AND CURRENT EXPOSURE
Plaintiff has the burden of proof on the issue of current exposure to the hazards of asbestos. While plaintiff is not required to provide scientific proof of his current exposure to asbestos for purposes of § 97-61.5(b), nevertheless he must prove current exposure by the greater weight of the competent evidence. See Austin, 141 N.C. App. at 404. The Austin Court did not hold, as plaintiff suggests in this case, that plaintiff is entitled to removal without establishing that he iscurrently exposed to the hazards of asbestos; i.e.: that he is employed in an industry that actually exposes him to the hazards of asbestos. Further, § 97-61.5(b) compels removal from "hazardous exposure" to asbestos, not merely because a facility may have asbestos present, but because asbestos is present in such a form as it can be inhaled, i.e. friable. Asbestos that is non-friable, encapsulated, or in other form such that it would not be inhaled and therefore not cause or contribute to asbestosis is not, while in that form, a "hazardous" exposure. Thus, plaintiff must present evidence that there is asbestos in the facility that currently presents a hazardous exposure to him while working. SeeAustin, 141 N.C. App. at 415.
First, plaintiff has not established a compensable claim for asbestosis arising out of his employment with defendant. As Deputy Commissioner Chapman accurately described in her Opinion and Award, plaintiff gave conflicting medical history concerning asbestos exposure and the results of plaintiff's medical tests do not allow for the diagnosis of asbestosis. The American Thoracic Society has determined that the diagnosis of "asbestosis" is a judgment based on a careful consideration of all relevant clinical findings. The Diagnosis of Nonmalignant DiseasesRelated to Asbestos, 134 American Review of Respiratory Disease 363 (Adopted by American Lung Association, March 1986). According to the American Thoracic Society, the diagnosis of asbestosis requires:
A reliable history of exposure, and
 An appropriate time interval between exposure and detection, with[2]
 Chest roentgenographic evidence of type "s," "t," "u," small irregular opacifications of a profusion of 1/1 or greater,
 A restrictive pattern of lung impairment with a forced vital capacity below lower limit of normal,
 A diffusing capacity below the lower limit of normal, and/or
 Bilateral late or pan inspiratory crackles at the posterior lung bases not cleared by cough.
The American Thoracic Society (ATS) acknowledged that interstitial fibrosis might be present without any of the other criteria (items 3 through 6, above); however, it was recommended that a clinical diagnosis could not be made without the other criteria. Id. Applying this standard to the medical evidence in this case it can be fairly concluded that plaintiff has some form of pulmonary fibrosis, however, as the Deputy Commissioner expressed it cannot be said that the disease is asbestosis. First, the evidence of exposure is not reliable. Second, the profusion ratings on the chest films are not sufficiently consistent. Third, the evidence does not consistently establish that plaintiff has a restrictive pulmonary impairment.[3] And, moreover, there is evidence that plaintiff was exposed during 6 months of employment immediately after he left defendant and plaintiff has filed a federal lawsuit contending asbestos exposure after he left Weyerhaeuser's employ; thus, even if he has the disease of asbestosis, the evidence does not establish that the last injurious exposure was with defendant. N.C. GEN. STAT. § 97-57. The competent medical evidence supports the findings made by Deputy Commissioner Chapman in this case and without competent evidence concerning exposure during plaintiff's various places of employment, the diagnosis of asbestosis and the determination of the last injurious employment cannot be made.[4]
Further, Plaintiff has not presented any evidence that employment with defendant currently exposes him to the hazards of asbestos. The undisputed evidence is that plaintiff worked for defendant for less than 12 months in 1965-66. Thus, there is no evidence that plaintiff iscurrently employed with defendant, let alone that employment with defendant is currently hazardous. The parties in this case have not stipulated that plaintiff was last injuriously exposed (30 work days inside of seven consecutive months) to asbestos while employed by defendant. Despite conflicting evidence as to whether plaintiff was hazardously exposed to asbestos after he left defendant's employ in 1966, there is no evidence that plaintiff's current employment is with Weyerhaeuser. Thus, there is no evidence to support an essential element of plaintiff's claim under § 97-61.5(b), to wit: that plaintiff's employment presents a hazardous exposure.
 CONCLUSION
For the foregoing reasons, I cannot agree that plaintiff has a compensable claim for asbestosis arising out of his employment with defendant and with his last injurious exposure occurred during that employment. Therefore, I respectfully dissent from the majority opinion.
 S/_______________ DIANNE C. SELLERS COMMISSIONER
[1] The evidence is conflicting concerning plaintiff's exposure to asbestosis after his employment with Weyerhaeuser. Plaintiff testified that he was not exposed to asbestos after he left Weyerhaeuser, however, he informed his doctors that he was exposed in his next job, and has filed a federal lawsuit contending exposure to asbestos at several employers, including employment after he left Weyerhaeuser in 1966. This creates a double-edged sword. If plaintiff has asbestosis and his current self-employment, or any other employment in which he is actually engaged, is "hazardous", the § 97-61.5(b) requires that we remove plaintiff from that employment. If this is correct, however, then plaintiff's last injurious exposure is with a subsequent employer and Weyerhaeuser is not liable for his claim. N.C. GEN. STAT. § 97-57. On the other hand, if plaintiff's current employment is not "hazardous," then there is no basis to order removal. Austin v. Continental GeneralTire, 141 N.C. App. 397, 540 S.E.2d 824 (2000) (J. Greene, dissenting),reversed and adopting dissenting opinion, 354 N.C. 334, 553 S.E.2d 680
(2001).
[2] The American Thoracic Society expressed that "[I]t is possible that interstitial fibrosis may be present even though none of these criteria [referring to items 3-6, above] are satisfied, but in our opinion, in these circumstances the clinical diagnosis cannot be made." Thus, a proper diagnosis, absent pathologic examination, requires proof of the first two criteria and at least 1 of the remaining criteria. TheDiagnosis of Nonmalignant Diseases Related to Asbestos, 134 AmericanReview of Respiratory Disease 363 (Adopted by American Lung Association, March 1986).
[3] A restrictive impairment is reported on one pulmonary function test, however, is not reported on others. A restrictive impairment consistent with asbestosis does not appear and disappear; therefore, the fact that plaintiff has a restrictive impairment reported on one pulmonary function test does not reflect that that finding was from asbestosis because subsequent tests failed to confirm the condition.
[4] Plaintiff has the burden of proof; therefore, the failure to establish each element of his claim should require that his claim be denied.