***********
The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Gheen, and the briefs and arguments of the parties. The appealing party has shown good grounds to reconsider the evidence, receive further evidence, or rehear the parties or their representatives. Having reviewed the competent evidence of record, the Full Commission affirms in part and reverses in part the Opinion and Award of Deputy Commissioner Gheen.
 ***********
The Full Commission finds as a fact and concludes as a matter of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner as:
 STIPULATIONS *Page 2 
1. The Plaintiff-Employee (hereinafter "Plaintiff") was employed full-time by Defendant-Employer, Aeroquip, Inc. (hereinafter "Defendant-Employer"), formerly known as Sterling Holdings Inc., from 1981 until May of 1997.
2. The parties are subject to the North Carolina Workers' Compensation Act (hereinafter "Act") with Defendant-Employer employing the requisite number of Employees to be bound under the provisions of said Act. Further, that all parties are properly before the Industrial Commission, and that the Industrial Commission has jurisdiction of the parties and of the subject matter.
3. All parties have been properly designated and there is no question as to misjoinder or nonjoinder of parties.
4. Defendant-Employer was insured by The Hartford Insurance Company during Plaintiff's entire period of employment with Defendant-Employer.
5. Plaintiff's original claim for asbestosis and asbestos related pleural disease, I.C. File No. 610614, against Defendant-Employer was previously settled via compromise settlement agreement on March 1, 1999. The parties agreed that Plaintiff reserved the right to file an asbestos related cancer claim in the future.
6. Plaintiff's workers compensation rate is $463.81.
 *********** EVIDENTIARY MATTERS
1. On January 19, 2011, Defendants filed a Motion moving the Commission, pursuant to Rule 701 of the Workers' Compensation Rules of the North Carolina Industrial Commission, to allow additional evidence into the record. Specifically, Defendants requested that counsel for Plaintiff be ordered to provide a copy of the fee agreement reached between *Page 3 
Plaintiff and counsel for Plaintiff, and that said fee agreement be included in the record of the case. On February 23, 2011, Chair Pamela T. Young entered an Order holding Defendants' Motion in abeyance until consideration by the Full Commission at the hearing on Defendants' appeal. Plaintiff objected to Defendants' Motion at the hearing before the Full Commission on April 14, 2011. On May 31, 2011, the Full Commission filed an Order instructing counsel for Plaintiff to submit to the Full Commission a copy of the fee agreement reached between Plaintiff and counsel for Plaintiff in this matter. Counsel for Plaintiff complied on June 6, 2011. Pursuant to Rule 701 of the Workers' Compensation Rules of the North Carolina Industrial Commission, the Full Commission hereby ALLOWS Defendants' Motion to allow additional evidence into the record in this matter.
2. On its own Motion, pursuant to Rule 701 of the Workers' Compensation Rules of the North Carolina Industrial Commission, the Full Commission hereby ORDERS that the Order Approving Compromise Settlement Agreement filed by the Industrial Commission on March 8, 1999, which is contained in the Commission's file for this matter, be made a part of the evidence of record in this matter.
 *********** ISSUE
The sole issue on appeal to the Full Commission is whether the Deputy Commissioner erred in finding and concluding that Defendants were responsible for payment of Plaintiff's attorney's fees in spite of the Deputy Commissioner's denial of Plaintiff's claim for weekly disability benefits?
 *********** *Page 4 
Based upon all the competent evidence of record and the reasonable inferences flowing therefrom, the Full Commission makes the following:
 FINDINGS OF FACT
1. Plaintiff worked for Defendant-Employer from 1981 until May, 1997, when Defendant-Employer's manufacturing facility was moved to Mexico.
2. Defendant-Employer admits in its contentions that Plaintiff may have been exposed to asbestos during the period of his employment. Defendant-Employer, consistent with its post-hearing admission, offered no appreciable testimony to dispute Plaintiff's claim of asbestos exposure during his period of employment with Defendant-Employer.
3. Plaintiff's essential job duties at Defendant-Employer support a finding that he was exposed to asbestos. While employed with Defendant-Employer, Plaintiff performed plant maintenance, initially working on hydraulic presses, and later maintaining boilers. As a maintenance worker, Plaintiff routinely worked throughout the plant.
4. Defendant-Employer's boilers were replete with piping and joints that were insulated with or contained seals containing asbestos. The presence of asbestos in pipe insulation was confirmed by a plant survey conducted in 1996, but the survey did not include joint gaskets. As a routine part of his maintenance duties, Plaintiff repaired leaks to the piping and replaced gaskets that exposed him to friable insulation containing asbestos and gasket dust containing asbestos.
5. Plaintiff's credible testimony establishes that when working on gaskets, he would sand, grind or file the old gasket material off, resulting in large amounts of dust which was stirred by wind gusts to the extent that it was visible in the air to the human eye. *Page 5 
6. Repair of leaking boiler pipes required removal of insulation containing asbestos, making it friable. The dust created would become airborne.
7. Plaintiff also worked on presses denominated C1 through C7. These were large presses some two stories in height. The platens of the two surfaces of the press used to shape products contained insulation between the platen and the base and the platen and the rim in order to protect against heat transfer. That insulation was made of asbestos, as confirmed by the operator's manual. Removal and replacement of the insulation of Defendant-Employer's seven presses took approximately five days per unit.
8. Plaintiff's work on Defendant-Employer's two vinyl ovens included replacing insulating curtains containing asbestos. A curtain made of asbestos covered the oven to contain heat. During replacement, light to moderate dust was created.
9. Defendant-Employer did not provide Plaintiff with a respirator.
10. Plaintiff has an extensive history of cigarette abuse. He started smoking in 1954, at a rate of one pack per week. He continued smoking at that rate until 1985, when he began to smoke one pack per day. Plaintiff stated that he had been around secondhand smoke "from the day I was born" as his mother and father both smoked in the house. Plaintiff stopped smoking in 2005.
11. Plaintiff was seen by Dr. Stephen Proctor upon referral by his attorney. Dr. Proctor administered a pulmonary function test on November 10, 1995, which revealed a mild restrictive ventilatory defect. Dr. Proctor opined that Plaintiff suffered from mild asbestosis and mild pleural plaques related to asbestos exposure.
12. Plaintiff's diagnosis of asbestosis was subsequently confirmed by Dr. Robert Rostand, of the North Carolina Occupational Disease Panel. On May 2, 1997, based on his *Page 6 
review of medical records, including a 1995 CT scan of the chest and a pulmonary function test, Dr. Rostand diagnosed asbestos related disease of the lung and pleura among other conditions such as obesity, osteoarthritis, hypertension, atherosclerotic heart disease, asthmatic bronchitis secondary to cigarette smoking and thrombocytopenia.
13. Plaintiff was diagnosed with lung cancer on December 28, 2005. A lung resection removed the lobes of his right lung and was followed by appropriate chemotherapy. Chemotherapy was terminated before completion because Plaintiff could not tolerate the treatments.
14. Dr. Arthur Frank has been involved with asbestos related diseases for approximately 40 years. Dr. Frank's educational background, training, extensive experience and peer reviewed treatises make him highly qualified to render expert opinions on asbestos related diseases. Dr. Frank issued a report on November 27, 2006, expressing his opinion that Plaintiff's lung cancer was caused by a combination of his exposure to asbestos and his habit of cigarette smoking. He also opined that Plaintiff's exposure to asbestos put him at greater risk of developing lung cancer than that faced by the general public.
15. Plaintiff's board certified treating oncologist, Dr. David Eagle, performs examinations every six months to look for any reoccurrence of cancer. In Dr. Eagle's opinion, Plaintiff's exposure to asbestos, a known carcinogen, would have put him at a greater risk of developing lung cancer than that faced by the general public. Dr. Eagle, who was aware of Plaintiff's history of cigarette abuse, opined that Plaintiff's exposure to asbestos and his smoking, in combination, significantly contributed to his lung cancer.
16. Dr. Sever Surdulescu, a board certified pulmonologist, began treating Plaintiff in 2005 and continues to provide care. He agrees with the diagnosis of asbestosis. *Page 7 
17. Dr. Surdulescu believes that Plaintiff is incapable of employment given the fact that two-thirds of his right lung has been removed, necessitating oxygen therapy and restriction from physical activity upon shortness of breath.
18. Defendant-Employer's contention that Plaintiff's cancer was not caused by any exposure to asbestos is based upon the testimony of Dr. Victor Roggli, a pathologist, who has considerable experience in asbestos related diseases. Having examined pathological material from Plaintiff's lung and having found no evidence of asbestos fibers, Dr. Roggli opined that no link between asbestos exposure and Plaintiff's lung cancer can be demonstrated.
19. In evaluating and weighing the probative weight of the opinions given by the various medical experts, the Full Commission finds that the following facts are salient:
 a. The absence of asbestos fibers in the pathologic material examined by Dr. Roggli does not, in and of itself, compel a conclusion that Plaintiff did not suffer from asbestosis or that his subsequent cancer was not caused, in conjunction with his cigarette abuse, by exposure to asbestos.
 b. Defendant-Employer's asbestos survey of its facility in 1996 identified the presence of chrysotile asbestos fibers only. The human body is capable of breaking down and removing chrysotile asbestos fibers from the lungs but cannot do so with other types of asbestos fibers.
 c. Dr. Roggli was not made aware during his study of Plaintiff's pathologic lung material, or at the time of his opinion, that Plaintiff was exposed only to chrysotile asbestos fibers. It is less likely that such fibers would be present in any forensic examination. *Page 8 
 d. Dr. Roggli, who subscribes to a set of asbestos diagnostic protocols referred to as the Helsinki Criteria, admitted during cross examination that when chrysotile asbestos exposure is indicated, the Helsinki Criteria provide that occupational histories are probably a better indicator of lung cancer risk from chrysotile asbestos than the fiber burden analysis performed by Dr. Roggli.
19. Weighing all of the medical evidence and the expert opinions, the Full Commission gives greater weight to the opinions of Drs. Frank, Eagle and Surdulescu, and finds that Plaintiff's lung cancer was caused by his exposure to asbestos in combination with cigarette smoking.
20. Plaintiff's employment with Defendant-Employer ended in May, 1997. Thereafter, Plaintiff went to work for Voith Paper Rolls where he worked for approximately one month. Shortly thereafter, Plaintiff began work for Manpower International, a temporary staffing agency, and was placed at Donaldson Tube where he was involved in the manufacture of exhaust systems for Freightliner trucks and also lawnmowers. Plaintiff was eventually hired directly by Donaldson Tube and he continued to work for that employer until June 30, 1999.
21. Plaintiff testified that he was not exposed to asbestos with any employer subsequent to Defendant-Employer, and no evidence of record establishes asbestos exposure after his Defendant-Employer employment.
22. Beginning in 1998, Plaintiff began to experience severe and debilitating problems with his esophagus and heart. In July, 1998 Plaintiff underwent heart surgery to place two stents in damaged arteries. He was removed from work for approximately eight weeks. *Page 9 
23. Plaintiff treated with Dr. Gregory Hall and Dr. Anthony Macaseib for his abdominal problems. In August of 1998, Plaintiff underwent surgery to correct persistent esophageal pain. On January 4, 1999, Dr. Hall removed Plaintiff from work completely. Plaintiff testified that both Dr. Hall and Dr. Macaseib told him that he "might as well forget trying to do public work on account of [his] health condition."
24. The evidence is undisputed that Plaintiff's heart, escophageal and abdominal problems are not related to his occupational exposure to asbestos.
25. Plaintiff's employment with Donaldson Tube ended on June 30, 1999. From the time of his diagnosis until his retirement on Social Security, Plaintiff's asbestosis did not require any appreciable medical treatment and Plaintiff remained employed. Following his retirement, Plaintiff did not require medical treatment for asbestosis until he was diagnosed with lung cancer in 2005.
26. Plaintiff acknowledged that the reason he stopped working for Donaldson Tube was for reasons unrelated to asbestosis. Thereafter, Plaintiff elected to take Social Security early retirement after he gave up trying to return to work following his heart and esophageal surgeries consistent with the advice of Drs. Hall and Macaseib.
27. At the time of the hearing before the Deputy Commissioner, Plaintiff was 74 years old. He has a GED and has only performed industrial type maintenance work his entire career.
28. Plaintiff contends that, prior to his diagnosis of lung cancer, he could have held some form of employment. Plaintiff's contention is not well taken. Plaintiff's own evidence establishes that, due to his non-occupational heart, stomach and esophageal conditions, which *Page 10 
preceded his lung cancer by several years, he was disabled given his age, education and lack of transferable employment skills.
29. Plaintiff has received extensive medical treatment for his asbestos related lung cancer and will require additional care in the future.
30. Plaintiff and his counsel entered into a contract of representation with respect to this matter which provides that the fee sought by counsel for Plaintiff was a contingency fee not to exceed one-quarter (25%) of any compromise settlement or one-third (33%) of any award of compensation to Plaintiff by the Commission following all hearings and appeals in his case.
31. As stipulated by the parties, Plaintiff's original claim for asbestosis and asbestos related pleural disease in this same case was previously settled via compromise settlement agreement on March 1, 1999. That settlement agreement provided for payment of attorney's fees to counsel for Plaintiff in the amount of $10,000.00.
 ***********
Based upon the foregoing Stipulations and Findings of Fact, the Full Commission enters the following:
 CONCLUSIONS OF LAW
1. Plaintiff developed lung cancer as a direct result of his employment with Defendant-Employer. N.C. Gen. Stat. § 97-53(13). Plaintiff's lung cancer resulted from causes and conditions characteristic of and peculiar to his employment with Defendant-Employer, in combination with his extensive history of cigarette smoking. Plaintiff's exposure to asbestos while working for Defendant-Employer placed him at a greater risk than the general public of contracting asbestosis and lung related cancers. Id.; Hansel v. Sherman Textiles,304 N.C. 44, 52, 283 S.E.2d 101, 105-106 (1981). *Page 11 
2. Plaintiff was last injuriously exposed to the hazards of his occupational disease during his employment with Defendant-Employer. N.C. Gen. Stat. § 97-57; Rutledge v. Tultex Corp.,308 N.C. 85, 89, 301, S.E.2d 359, 362-363 (1983). The Hartford Insurance Company was the carrier on risk for Defendant-Employer when Plaintiff was last injuriously exposed to asbestos, which exposure resulted in his development of lung cancer. The Hartford Insurance Company is therefore responsible for the payment of any workers' compensation benefits Plaintiff would be entitled to receive. N.C. Gen. Stat. § 97-57.
3. Plaintiff has failed to prove entitlement to disability benefits. N.C. Gen. Stat. § 97-54 defines disability as "the state of being incapacitated as the term is used in defining "disablement." N.C. Gen. Stat. § 97-55." In turn, N.C. Gen. Stat. § 97-54 provides, in part (emphasis added):
 The term "disablement" as used in this Article as applied to cases of asbestosis and silicosis means the event of becoming actually incapacitated because of asbestosis or silicosis to earn, in the same or any other employment, the wages which the employee was receiving at the time of his last injurious exposure to asbestosis or silicosis. . . .
For purposes of determining disability benefits for asbestosis, the "time of the injury" is deemed to be the date that a claimant is diagnosed with the disease. The Court of Appeals held inMoore v. Standard Mineral Company,122 N.C. App. 375, 469 S.E.2d 594 (1996), that the proper date for determining the average weekly wage of a plaintiff . . . was as of the time of injury, which was deemed to be the date of diagnosis of silicosis or asbestosis." See also Wilder v. Amatex Corp.,314 N.C. 550, 560, 336 S.E.2d 66, 72 (1985) (holding that the legislature and the Court have recognized that exposure to disease-causing agents is not itself an injury). Although persons may have latent diseases of which they are unaware, it is not possible to say precisely when the disease first occurred in the body. The only possible point in time from which to measure the *Page 12 
"first injury" in the context of a disease claim is when the disease is diagnosed; December 28, 2005 in this case as all issues of disability related to asbestos exposure prior to that date are precluded by the settlement agreement approved by the Industrial Commission.
4. In cases where the employee has severe conditions that are potentially disabling and who, subsequent to those conditions, develops an occupational disease that is disabling, the Industrial Commission must undertake an analysis of whether the occupational disease was a substantial and material factor in bringing about disability which is also caused by conditions not related to employment. Harrell v. Harriet Henderson Yarns,314 N.C. 566, 336 S.E.2d 47 (1985). Having reviewed the entire record and weighed and evaluated Plaintiff's severe conditions not related to his employment, the timing of those conditions and impact on his ability to engage in employment with the effect of his occupational related cancer, the greater weight of the evidence compels a conclusion that Plaintiff was disabled from non-occupational conditions prior to the diagnosis of occupational related lung cancer. Plaintiff's contention to the contrary based upon his belief that he was capable of "doing something" despite these nonrelated conditions is not convincing because Plaintiff, upon medical advice at the time, sought early retirement because of these nonrelated conditions. N.C. Gen. Stat. §§ 97-54 97-55.
5. Plaintiff is entitled to payment of all medical expenses incurred, or to be incurred as a result of his lung cancer that are reasonably necessary to effect a cure, give relief, or lessen his period of disability. N.C. Gen. Stat. §§ 97-2(19), 97-25.
6. The Full Commission, in its discretion, declines to award attorney's fees to counsel for Plaintiff pursuant to N.C. Gen. Stat. § 97-90. In the instant case, a fee agreement between Plaintiff and his counsel exists which provides for attorney's fees not to exceed one-third (33%) of any award of compensation to Plaintiff by the Commission. As the Full *Page 13 
Commission has determined that Plaintiff has failed to prove entitlement to disability benefits, Counsel for Plaintiff is not entitled to attorney's fees under the terms of his fee agreement with Plaintiff, and the Full Commission declines to shift the cost of counsel for Plaintiff's unsuccessful pursuit of disability benefits to Defendants. In declining to award counsel for Plaintiff attorney's fees pursuant to N.C. Gen. Stat. § 97-90, the Full Commission takes into account the fact that Plaintiff's original claim in this matter was for both disability benefits and medical benefits, and therefore, counsel for Plaintiff would have been entitled to the payment of an attorney's fee had disability benefits been awarded, and the March 1, 1999 compromise settlement agreement reached by the parties in this matter which provided for the payment of attorney's fees to counsel for Plaintiff in the amount of $10,000.00. Finally, in support of his position that the Deputy Commissioner's award of attorney's fees pursuant to N.C. Gen. Stat. § 97-90 should be upheld, counsel for Plaintiff cites Palmer v. Jackson,157 N.C. App. 625, 579 S.E.2d 901 (2003) in which the North Carolina Court of Appeals held in that, "Upon the proper findings of fact as to the work and the special nature of the case . . ." the Commission could order that defendant-carrier pay an additional amount of attorney's fees based upon a percentage of medical compensation. The Full Commission concludes that the nature of the case at hand does not warrant fashioning such an award of attorney's fees.
 ***********
Based upon the foregoing Findings of Facts and Conclusions of Law, the Full Commission enters the following:
 AWARD
1. Plaintiff's claim for weekly disability benefits is DENIED. *Page 14 
2. Defendant-Employer shall pay for all medical expenses incurred or to be incurred by Plaintiff as a result of the compensable injury when bills for the same have been submitted in accordance with Industrial Commission procedures for so long as such evaluations, treatments and examinations may reasonably be required to effect a cure, give relief, or lessen Plaintiff's period of disability.
3. Defendants shall pay the costs.
This the ___ day of July, 2011.
 S/___________________ LINDA CHEATHAM COMMISSIONER
CONCURRING:
 S/___________________ DANNY LEE McDONALD COMMISSIONER
DISSENTING IN PART:
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER *Page 15