I disagree with the majority's conclusion that plaintiff has asbestosis and that this case should be remanded to reconsider plaintiff's entitlement to 104 weeks of benefits pursuant to § 97-61.5(b) under an estoppel theory. The prerequisites for an order of removal under § 97-61.5(b) are:
Diagnosis of asbestosis or silicosis; and
 Current employment that exposes plaintiff to the hazards of asbestosis or silicosis.
N.C. Gen. Stat. § 97-61.5(b); see Austin v. Continental GeneralTire, 141 N.C. App. 397, 540 S.E.2d 824 (2000) (J. Greene, dissenting),reversed and adopting dissenting opinion, 354 N.C. 344, 553 S.E.2d 680
(2001); Abernathy v. Sandoz Chemicals, 151 N.C. App. 252, 565 S.E.2d 218,review denied, 356 N.C. 432, 572 S.E.2d 421 (2002). The award of 104 weeks requires that plaintiff additionally prove a third element:
 That the employee is removed from the industry at the directive of the Commission.
Moore v. Standard Mineral Company, 122 N.C. App. 375, 469 S.E.2d 594
(1996); Clark v. ITT Grinnell, 141 N.C. App. 417, 539 S.E.2d 369,remanded for reconsideration in accordance with Austin, 354 N.C. 572,558 S.E.2d 867 (2002); N.C. Gen. Stat. § 97-61.5(b). Because plaintiff has failed to establish each of the three requirements, §97-61.5(b) benefits should not be awarded in this case.
 DIAGNOSIS OF ASBESTOSIS
I disagree with the majority's conclusion that plaintiff has asbestosis. "Asbestosis" is statutorily defined as "characteristic fibrotic condition of the lungs caused by the inhalation of asbestos dust." N.C. Gen. Stat. § 97-62. Moreover, asbestosis is a medical condition that is to be determined by current, medically accepted standards of diagnosis. The medically accepted standards for the diagnosis of asbestosis are contained in. The Diagnosis of NonmalignantDiseases Related to Asbestos, 134 American Review of Respiratory Disease
363 (Adopted by American Lung Association, March 1986). The North Carolina Workers' Compensation Act places the burden on the plaintiff to establish that his claim is compensable by a preponderance of the competent evidence. In a similar fashion the medical standards for a differential diagnosis require that the physician have all available medical evidence necessary to make the diagnosis and that the doctor consider and be able to preclude other potential causes for the disease or condition. See Westberry v. Gislaved Gummi, 178 F.3d 257 (4th Cir. 1999).
The American Thoracic Society has determined that the diagnosis of "asbestosis" is a judgment based on a careful consideration of all relevant clinical findings. The Diagnosis of Nonmalignant DiseasesRelated to Asbestos, 134 American Review of Respiratory Disease 363 (Adopted by American Lung Association, March 1986). According to the American Thoracic Society, the diagnosis of asbestosis requires:
A reliable history of exposure, and
 An appropriate time interval between exposure and detection, with[1]
 Chest roentgenographic evidence of type "s," "t," "u," small irregular opacifications of a profusion of 1/1 or greater,
 A restrictive pattern of lung impairment with a forced vital capacity below lower limit of normal,
A diffusing capacity below the lower limit of normal, and/or
 Bilateral late or pan inspiratory crackles at the posterior lung bases not cleared by cough.
The American Thoracic Society acknowledged that interstitial fibrosis might be present without any of the other criteria (items 3 through 6, above); however, the ATS stated that a clinical diagnosis could not be made without the other criteria. Id.
Having reviewed the evidence in accordance with the ATS standard, I do not agree that plaintiff has a valid diagnosis of asbestosis. By history, plaintiff appears to satisfy the first two criteria of the ATS standard, which address exposure and latency. As expressed by the ATS standard, however, these two criteria alone are not sufficient to diagnose asbestosis, and this position appears to be reasonable in that not all persons exposed to asbestos dust develop asbestosis. The issue is diagnosis of the disease, not merely whether the employee is or was exposed. Similarly, the issue is whether plaintiff has "asbestosis," not merely whether he has findings that are "consistent with asbestosis." The third criteria addresses radiological evidence of interstitial fibrosis consistent with asbestosis and requires small irregular opacifications of type "s," "t," "u," with a profusion rating of 1/1 or greater. Numerous x-rays are in evidence, however, they do not support the diagnosis of asbestosis[2] because they fail to consistently establish the required profusion rating of 1/1 or greater. Numerous pulmonary function studies are in evidence that reveal that plaintiff has obstructive lung disease, most likely emphysema or some other form of COPD secondary to smoking, however, without evidence of a restrictive pattern consistent with asbestosis. Thus, the evidence does not support the fourth criteria. Plaintiff has a lowered diffusion capacity based on his non-related obstructive disease, however, no restrictive component necessary for the diagnosis of asbestosis. Finally, plaintiff has not consistently demonstrated bilateral late or pan inspiratory crackles in the posterior lung bases, not cleared by cough, as required under the sixth criteria of the ATS standard. Because the evidence does not support the third through sixth criteria of the ATS standard for diagnosis, I cannot agree with the majority's conclusion that plaintiff has asbestosis.
Further, I note that the evidence cited by the majority does not competently support the conclusion that plaintiff has asbestosis. For example, the majority cites physician conclusions that plaintiff has conditions that are "consistent with" asbestosis. The majority has failed to set forth facts that are in evidence to establish a diagnosis based on the medically accepted standard for diagnosis adopted by the American Thoracic Society. See Young v. Hickory Business Furniture, 353 N.C. 227,538 S.E.2d 912 (2000) (speculation and conjecture is not evidence); Seealso Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579,113 S.Ct. 2786 (1993) (court has duty to police the evidence to ensure that it is scientifically credible). A radiographic finding "consistent with asbestosis" would give reason to rule out this condition, however, it is not relevant evidence[3] that establishes that plaintiff more likely than not has asbestosis. See Holley v. ACTS, ___ N.C. ___, ___ S.E.2d ___ (2003) (could or might testimony not sufficient, standard is a reasonable degree of medical certainty); Rutledge v. Tultex Corp., 308 N.C. 85,301 S.E.2d 359 (1983) (prima facie case requires evidence that it is reasonably probable that a particular cause will cause a particular effect); Swink v. Cone Mills, 65 N.C. App. 397, 309 S.E.2d 271 (1983) (mere possibility does not satisfy requisite standard). For example an x-ray with a 0/1 or 1/0 profusion rating would be "consistent with" asbestosis, however, is not sufficient to actually diagnose the disease.See The Diagnosis of Nonmalignant Diseases Related to Asbestos, supra.
The majority, inappropriately, has accepted evidence that plaintiff's condition is "consistent with" asbestosis when the medical evidence does not support the diagnosis of asbestosis under the accepted medical standard for diagnosis. The majority cites the conclusions of Dr. Garland as if he diagnosed plaintiff with asbestosis, in addition to asbestos-based pleural disease. Although I agree that the evidence is conclusive that plaintiff has asbestos-related pleural disease, Dr. Garland did not personally reach the conclusion that plaintiff has a valid diagnosis of asbestosis. When asked to rely on radiology reports from plaintiff's physicians Dr. Garland stated that their reports would suggest the potential diagnosis of asbestosis. Dr. Garland, however, testified that he had reviewed one of plaintiff's prior chest x-rays and reviewed two separate CT Scans that were performed at his request, which failed to reveal asbestosis. Dr. Garland testified that based on the CT Scans, pulmonary function tests, and the examination and clinical history of plaintiff he had "no evidence of asbestosis." Further, when one examines the foundation for the medical opinions of Dr. Bernstein, Dr. Curseen, Dr. Dula, Dr. Lucas, Dr. Johnson, and Dr. Gaziano, their opinions that plaintiff has conditions "consistent with asbestosis" are not supported by competent evidence necessary to make the differential "diagnosis of" asbestosis under the ATS standard. Dr. Dula, Dr. Lucas, and Dr. Gaziano have interpreted plaintiff's x-rays as either failing to show parenchymal abnormalities or having at most a 1/0 profusion rating, which are below the minimum levels required under the ATS standard. Only Dr. Bernstein has read a film at the minimum 1/1 level, however, that film has not been read by any other physician, subsequent films have been read by B-readers of plaintiff's selection failed to reveal a 1/1 or greater profusion level, and evidence of interstitial fibrosis was not supported by the CT Scans. Even Dr. Bernstein agreed that the CT Scans are a more accurate assessment of asbestosis than the B-read. Thus, the lack of confirmation and negation of the 1/1 profusion level on the CT Scans underlies the validity of Dr. Bernstein's aberrant report of a 1/1 profusion level. Further, the lone B-read at the 1/1 profusion level is not competent, because there is evidence that plaintiff's pleural plaques and COPD could cause false positive profusion readings and the other radiology studies which do not support the diagnosis of asbestosis.[4]
In addition, both Dr. Bernstein and Dr. Curseen reported obstructive disease secondary to smoking rather than restrictive disease associated with asbestosis.
In answering the question before us, i.e., whether plaintiff has asbestosis, it is necessary to look beyond the conclusions of the "experts" and determine whether their opinions are supported by competent and medically accepted evidence. See Smith v. Beasley Enterprises, __ N.C. App. ___, ___ S.E.2d ___, 2002 WL 32058428 (2002) (motion to publish granted) (Commission should review witness' testimony to determine that it is competent). Therefore, although the "experts" relied upon by the majority state that plaintiff has pathology "consistent with asbestosis," the factual bases for their conclusions do not comply with the minimum required medical standards adopted by ATS. The physician's conclusions that are not supported by the relevant criteria under the medically accepted standard are not competent evidence. See Holley v. ACTS, ___ N.C. ___, ___ S.E.2d ___ (2003) ("could or might" evidence not sufficient, standard is reasonable degree of medical certainty); Youngv. Hickory Business Furniture, 353 N.C. 227, 538 S.E.2d 912 (2000) (speculation and conjecture is not evidence); See also Daubert v. MerrellDow Pharmaceuticals, Inc., 509 U.S. 579, 113 S.Ct. 2786 (1993) (court has duty to police the evidence to ensure that it is scientifically credible).
 NECESSARY ELEMENTS FOR ORDER OF REMOVAL/104 WEEKS
Removal from employment under § 97-61.5 requires a finding of at least two conditions: (1) that the plaintiff has a compensable claim for asbestosis; and (2) that plaintiff is currently employed (at the time of the "hearing after first [panel] examination") in a position that causes harmful exposure to asbestos. See Austin v. Continental General Tire,141 N.C. App. 397, 415, 540 S.E.2d 824, 835 (2000) (J. Greene, dissenting), reversed and adopting dissenting opinion, 354 N.C. 334,553 S.E.2d 680 (2001); Moore v. Standard Mineral Company,122 N.C. App. 375, 469 S.E.2d 594 (1996). On the issue of removal, §97-61.5(b) specifically provides:
 "If the Industrial Commission finds at the first hearing
that the employee has asbestosis or if the parties enter into an agreement to the fact that the employee has asbestosis, it shall by order remove the employee from any occupation which exposes him to the hazards of asbestosis"
[Emphasis added] Plaintiff has not met the second condition, and indeed has presented no evidence to prove that his occupation currently "exposes him to the hazards of asbestosis." Thus, plaintiff has not established that he is entitled to an order of removal. Only an appropriate order of removal, that actually removes plaintiff from his employment in the industry, triggers the payment of 104 weeks of benefits. See Clark v. ITTGrinnell, 141 N.C. App. 417, 539 S.E.2d 369, remanded forreconsideration, 354 N.C. 572, 558 S.E.2d 867 (2002); Austin,141 N.C. App. at 415; Moore, supra (removal from industry by directive of Commission); N.C. GEN. STAT. § 97-61.5(b) (if employee is removed from industry).
The application of the statutory provision regarding removal and subsequent payment of 104 weeks has a practical purpose and historical significance. By way of an explanation, employees in a dusty trade are entitled to a dusty trade card only after passing a chest x-ray examination, and for as long as their yearly chest x-rays remain clear. Upon a finding of asbestosis after clinical examination (the first panel examination), the employee's dusty trade card is revoked, prohibiting his continued employment in the dusty trade industry. The diagnosis of asbestosis and evidence of current hazardous exposure to asbestos thereby trigger an order of removal and the second and third panel examinations during which time the 104 weeks of benefits is paid. The length of the 104-week period is significant in the statutory scheme of the panel examinations. A 52-week period exists between the first and second panel examinations and another 52-week period exists between the second and third panel examinations. This accounts for the 104 weeks of benefits which are provided as a "safety net" for an employee who is suddenly prohibited from further employment in the dusty trade industry where the employee is currently hazardously exposed and whose final disability determination will not be made until after the third panel examination. Although § 97-61.5 has now been extended by the courts to non-dusty trade employment, the same principles apply. The 104 weeks of benefits is intended to compensate the employee who suddenly is prohibited from continuing in his current employment because it exposes him to the hazards of asbestos. Thus, evidence of plaintiff's current exposure to the hazards of asbestos is a critical element to be established prior to an order of removal and payment of 104 weeks of benefits.
Plaintiff has the burden of proof on the issue of current exposure to the hazards of asbestos. While plaintiff is not required to provide scientific proof of his current exposure to asbestos for purposes of § 97-61.5(b), nevertheless he must prove current exposure by the greater weight of the competent evidence. See Austin,141 N.C. App. at 404. The Austin Court did not hold, as plaintiff suggests in this case, that plaintiff is entitled to removal without establishing that he is currently exposed to the hazards of asbestos. Further, § 97-61.5(b) compels removal from "hazardous exposure" to asbestos, not merely because a facility may have asbestos present, but because asbestos is present in such a form as it can be inhaled, i.e. friable. Asbestos that is non-friable, encapsulated, or in other form such that it would not be inhaled and therefore not cause or contribute to asbestosis is not, while in that form, a "hazardous" exposure. Thus, plaintiff must present evidence that there is asbestos in the facility that currently
presents a hazardous exposure to him while working. See Austin,141 N.C. App. at 415.
Plaintiff has not presented any evidence that his employment with defendant currently exposes him to the hazards of asbestos. No lay testimony was offered in this case. The parties did stipulate, however, that plaintiff continues to be employed by defendant. There is, however, not evidence that plaintiff is currently, hazardously employed. The majority finds in Finding of Fact No. 3, "plaintiff was injuriously exposed to asbestos for more than 30 days or parts thereof inside seven consecutive months from 1942 to 1984." However, there is no evidence, stipulation, or reasonable inference to support the finding that plaintiff is currently, hazardously exposed to asbestos in employment with defendant. The majority correctly finds that plaintiff stopped working for defendant in 1984 when he retired at the age of 62. The parties also stipulated that plaintiff was last injuriously exposed (30 work days inside of seven consecutive months) to asbestos while employed by defendant. This finding and stipulation taken together, however, do not support the majority's finding and conclusion that plaintiff was hazardously exposed throughout his employment, or more significantly, at the present time is hazardously exposed in his employment with defendant. The stipulation does not define when during the forty-some years of employment plaintiff was last exposed to the hazards of asbestos, and more significantly, does not state whether plaintiff iscurrently exposed to the hazards of asbestos. Thus, there is no evidence to support an essential element of plaintiff's claim under §97-61.5(b).
 PLAINTIFF'S § 97-57 ARGUMENT IS MISPLACED
Rather than presenting evidence of current exposure to the hazards of asbestos in his employment, plaintiff suggests that the stipulation, made pursuant to § 97-57, that plaintiff was exposed to asbestos for 30 days within a seven-month period,[5] presents an irrebuttable presumption that plaintiff was exposed to asbestos in the last 30 days of his employment. Plaintiff's reliance on § 97-57 to determine current
exposure is misplaced because § 97-57 is not applicable for determining current exposure. Section 97-57 determines liability for "last injurious exposure" when there is a series of defendants, all of whom are potentially liable because their employment caused plaintiff to be exposed to the hazards of asbestos. Defendant's stipulation to "last injurious exposure" merely indicates that, should plaintiff successfully establish a compensable claim for § 97-61.5(b) benefits, then defendant is the liable employer. Section 97-57 does not abrogate plaintiff's burden to prove the elements of his case, including but not limited to, the elements for removal and the award of 104 weeks under § 97-61.5(b).
Plaintiff's argument arises from a misinterpretation of the Court of Appeals' decision in Barber v. Babcock Wilcox Construction Company,101 N.C. App. 564, 400 S.E.2d 735 (1991) and the North Carolina Supreme Court's decision in Fetner v. Rocky Mount Marble Granite Works,251 N.C. 296, 111 S.E.2d 324 (1959). Both of these cases deal with the issue of "last injurious exposure" for purposes of determining the particular defendant liable for benefits. Plaintiff misapplies § 97-57
to abrogate plaintiff's burden of proof with regard to current exposure when § 97-57 is only applicable after plaintiff has carried all of the threshold burdens of proof for compensability of his disease. Section97-57, in and of itself, does not remove plaintiff's burden to prove a necessary element of his § 97-61.5(b) claim; i.e.: current exposure to the hazards of asbestos. Furthermore, as these cases dealt with dusty trade defendants whose facilities continued to cause current exposure, whether there was "current exposure" was not an issue in controversy and therefore not a litigated issue in these cases.
Plaintiff has misinterpreted the Barber decision. Plaintiff, out of context, quotes Barber to find that § 97-57 "creates an irrebuttable legal presumption that the last 30 days of work is a period of last injurious exposure." See Barber 101 N.C. App. at 565. The issue inBarber was whether plaintiff who was only employed for forty-eight days at the second of two employers nevertheless had to establish that his exposure to asbestos was "injurious." The Court of Appeals correctly applied § 97-57 and explained "[i]n light of the irrebuttable legal presumption that the last thirty days of work subjecting the plaintiff to the hazards of asbestos is the period of last injurious exposure and the Commission's holding that plaintiff was exposed to the inhalation during the forty-eight days he worked for the defendant, such exposure must be deemed injurious." Id. at 566 [emphasis added]. However, contrary to plaintiff's argument in the instant case, the Court of Appeals in Barber
did not find that a plaintiff did not have to establish current exposure to asbestos for purposes of removal; rather, the Court of Appeals explained that the plaintiff did not have to prove that his exposure to asbestos was "injurious" because § 97-57 creates a presumption that 30 days of exposure within seven months is "injurious." Id. at 566. Further, the Court in Barber did not find evidence of exposure in the last 30 days of employment based on a presumption. In fact, the Barber
court had evidence of record to determine that plaintiff was exposed to asbestos during the forty-eight days that he worked for defendant. Id.
Similarly, the Supreme Court's decision in Fetner does not support plaintiff's argument that a stipulation of "last injurious exposure" is equivalent to a stipulation of current exposure. See Fetner v. RockyMount Marble Granite Works, 251 N.C. 296, 111 S.E.2d 324 (1959). InFetner, a dusty trades case, the issue was whether the exposure with a third employer for whom plaintiff only worked for eleven months was "injurious" when plaintiff was diagnosed with silicosis before he went to work for the third employer. In this case, plaintiff was diagnosed with silicosis on March 4, 1949, when he was working for the first employer, and his dusty trade card was revoked after his diagnosis. On August 10, 1950, plaintiff requested permission from the Industrial Commission to waive compensation and to go to work for the second employer. Plaintiff worked for the second employer from July 26, 1950 to October 19, 1950. Plaintiff then went to work for a third employer from November 4, 1950 to September 29, 1951. No waiver of compensation was sought for plaintiff's employment with the third employer, thereby raising the issue of whether the eleven-month employment with the third employer was "injurious" in light of the prior diagnosis of silicosis and prior revocation of plaintiff's dusty trade card based on that diagnosis. In examining the liability of the third employer, the Supreme Court held that the Commission may not arbitrarily select any thirty-day period of employment, but must select the last 30 days within a seven-month period during which the plaintiff was last exposed, as the period of "last injurious exposure." Fetner, 251 N.C. at 301. Moreover, the Supreme Court did not relieve plaintiff of the burden to present evidence on the period of hazardous exposure. Id. Competent evidence was presented and findings were made to determine when plaintiff was last exposed to the hazards of silica.
Contrary to the suggestion of plaintiff, the Fetner and Barber
decisions do not abrogate the requirement of plaintiff to establish by the greater weight of the competent evidence the period of hazardous exposure. Rather, these decisions hold that § 97-57 creates for purposes of liability among two or more defendants, where plaintiff proved hazardous exposure, an irrebuttable presumption that exposure for at least 30 days during a seven-month period is an "injurious exposure." In light of the stipulation of the parties and the lack of evidence of other hazardous employment, this issue is not present in this case; the defendant has stipulated that plaintiff's "injurious exposure" occurred during his employment with defendant.
Further, the plaintiff's illogical argument that the last thirty days of employment was injurious, without producing evidence of exposure to any asbestos during this thirty-day period, directly violates the Supreme Court's holding in Fetner that the Commission may "not arbitrarily select any thirty days of employment." Fetner, 251 N.C. at 300,111 S.E.2d at 327. The relevant period under § 97-57 is the "last thirty days of employment while exposed to silica [asbestos] dust." Fetner,251 N.C. at 300, 111 S.E.2d at 327. Without evidence of current exposure to asbestos, the Commission cannot find that plaintiff has met the second element of his claim, entitling him to an order of removal, which when accomplished triggers the award of 104 weeks of benefits. See Austin,141 N.C. App. at 145; N.C. GEN. STAT. § 97-61.5(b).
Further, the Barber and Fetner cases were only in litigation due to the apparent inequity resulting from the strict application of § 97-57
designating liability on the last hazardous employment and did not arise from any disagreement concerning "current exposure." For example, liability must be placed on the last employer where the plaintiff has been exposed to the hazards of asbestos for as little as 30 days even when a prior employer may have hazardously exposed plaintiff to asbestos for more than twenty years. However, an employer who escapes liability in one case despite long exposure may be the last, short-term employer in the next case. Thus, taken from a broad view, the statute is equitable, and is consistent with the goal of the Legislature to promote judicial economy. See N.C. GEN. STAT. § 97-57.
 REMOVAL FROM HAZARDOUS WORK
Plaintiff has argued illogically that he is entitled to an order of removal because his employment involves a hazardous exposure to asbestos, yet suggests that he is able to safely continue in his current employment. If plaintiff is currently hazardously exposed to asbestos, and has a valid diagnosis of asbestosis, we must order his actual removal from employment. See N.C. GEN. STAT. § 97-61.5(b). If he is notcurrently hazardously exposed to asbestos, he is not in an employment that requires removal. Id.; see Austin, 141 N.C. App. at 145. Plaintiff is only entitled to 104 weeks of benefits if he is actually "removed from the industry" following a sufficient order of removal. See Austin,supra; N.C. GEN STAT. § 07-61.5(b).
The question of current exposure to asbestos as a condition precedent to the award of 104 weeks of benefits was recently addressed by the Court of Appeals in Abernathy. See Abernathy v. Sandoz Chemical, 151N.C. App. 252, 565 S.E.2d 218, review denied, 356 N.C. 432, 572 S.E.2d 421 (2002). In Abernathy, the plaintiff was represented by the same firm who represents plaintiff in this case. The Court of Appeals' opinion notes that the parties agreed that the Commission's award of 104 weeks of benefits was in error when the employee had retired and thereby was notcurrently engaged in employment that exposed him to the hazards of asbestos. Despite this concession before the Court of Appeals, plaintiff's counsel has not abandoned this argument before the Industrial Commission in this case, and insists that employees who are retired (such as the instant case), as well as those who are currently employed in positions where there is no evidence of current exposure to the hazards of asbestos, are entitled to removal and the 104 weeks of benefits. Further, plaintiff argues before the Commission that Austin does not require plaintiff to prove current exposure to the hazards of asbestos; however, Judge Greene's dissenting opinion, adopted by the Supreme Court, clearly states:
 "An employee who is no longer employed in a position that causes harmful exposure need not be `removed' from his employment."
Austin, 141 N.C. App. at 415, 540 S.E.2d at 835. Judge Greene's statement is consistent with the express language of the Act requiring the Commission to order removal from "any occupation that exposes him to the hazards of asbestos". If the employee is not exposed to the hazards of asbestos, there is no hazardous employment from which to order the removal and the order of removal would be a legal nullity and, hence, could not trigger an award for 104 weeks of compensation.[6]
Saliently, I believe that plaintiff has failed to satisfy the requirements for removal from hazardous employment, and the award of 104 weeks of benefits, for at least two reasons: (1) plaintiff does not have asbestosis; and (2) plaintiff has failed to establish that his employment presents a current hazard. Therefore, I find that plaintiff has not established entitlement to § 97-61.5(b) benefits.
 NO EVIDENCE TO SUPPORT EQUITABLE ESTOPPEL
The evidence in this case consists of several medical depositions,[7]
stipulated medical records, stipulated testimony from other proceedings, plaintiff's testimony, and the hearing agreement of the parties. The majority, however, would have the Commission decide this case on argument of counsel that is not supported by the record.[8] There is no evidence before the Commission in this case to support the findings of the majority made in Findings of Fact Nos. 23, 24, and 25. These "findings" come solely from suggested argument of counsel for plaintiff. No evidence was presented to support the "findings" made by the majority. The argument of counsel is not evidence.
A major assumption in the plaintiff's argument, which has been blindly accepted by the majority, is that the defendant's voluntary medical monitoring program excluded its employees from coverage in the State's mandatory "dusty trades" medical monitoring program.[9] The evidence, however, does not support the conclusion that Weyerhaeuser's implementation of a monitoring program caused Weyerhaeuser to be excluded from the dusty trades monitoring program.
On this issue, plaintiff submitted the testimony of William H. Stephenson, which was taken in I.C. No. 902274 and is included in the stipulated exhibits in this action. Mr. Stephenson is the former Chairman of the Industrial Commission who has held numerous positions with this agency from 1948 through 1990, and subsequently has served on the advisory board of this agency. Mr. Stephenson explained that the Industrial Commission originally administered the dusty trade program until 1943 when the industrial hygienist at the Commission, and the program, was transferred to the State Board of Health. Mr. Stephenson explained that the State Board of Health would notify the Industrial Commission that a particular employer employed persons in a dusty environment and that the Industrial Commission could then declare the employer to be a "dusty trade" subject the dusty trades monitoring program. The Industrial Commission relied on the State Board of Health to determine the industries and employers that were subject to this program. Weyerhaeuser, however, has never been designated as a dusty trade, and the Industrial Commission was not aware that Weyerhaeuser was sending films [chest x-rays] for review by the State Board of Health. On the critical issue of whether Weyerhaeuser's acts somehow exempted them from the dusty trades program, Mr. Stephenson explained:
 Q. Is it your testimony that the industrial commission could or would have designated Weyerhaeuser as a dusty trade if the commission had been advised that Weyerhaeuser was conducting these annual examinations and all which are documented in the exhibit?
 A. The commission would have designated Weyerhaeuser a dusty trade if the commission had been advised by the state board of health that the dust was present as evidenced in this documents.
 A. If the commission had known that the dust levels were as indicated here by the industrial hygienist that I believe was employed by Weyerhaeuser,, the commission would have asked the state board of health to do their own industrial hygiene survey.
 Q. But in any event, the commission did not so designate Weyerhaeuser?
 A. Oh, no. The commission, as far as I know had no knowledge of what I just told you what I found out today.
 So the division that gave the industrial commission information about dusty trades is a division that was in communication with Weyerhaeuser about their practices and asbestos exposure?
 That's correct. They just didn't notify the commission.
Who did not notify the commission?
 The occupational health branch of the state board of health.
 So there was certainly nothing Weyerhaeuser failed to do that they had any obligation to do under the act?
A. As far as I know, under the act, that's true.
Thus, contrary to the findings of the majority, the evidence is that Weyerhaeuser was communicating with the State Board of Health; however, the State Board of Health did not advise the Industrial Commission to include Weyerhaeuser on the dusty trades list. There is no evidence that Weyerhaeuser did anything to "convince the State of North Carolina that defendant need not be included in the state Dusty Trades Program." Rather, Mr. Stephenson testified that if the Industrial Commission was informed by the State Board of Health about the dusty environment "the commission would have ordered Weyerhaeuser to do what they were already doing" There is no evidence that voluntary acts of Weyerhaeuser of monitoring its employees and submitting their x-rays for review by the State Board of Health precluded the Industrial Commission from declaring Weyerhaeuser a "dusty trade" or that defendant otherwise "convinced" the State that it did not have to be subject to this regulation.
Further, there is no evidence, available for review, to suggest that plaintiff exhibited signs of asbestosis in 1984, when he retired, or at any other times while he was employed by defendant. Plaintiff testified that he had shortness of breath when he retired; however, this symptom is consistent with his severe chronic obstructive disease, secondary to cigarette smoking. Further, plaintiff had normal chest x-rays with a profusion reading below 1/1 and pulmonary function studies which failed to reveal restrictive disease in the late 1990s. Thus, it is not reasonable that he would have demonstrated asbestosis 15 years prior when he retired. Therefore, there is no basis to assume[10] that if he would have anticipated that the dusty trades program would have protected him, or that the program would have produced information to allow for an earlier diagnosis of asbestosis. Thus, there is no basis to apply the estoppel doctrine under the circumstances of this case.
Unfortunately, the majority has chosen to decide this case based on the unsupported argument of plaintiff's counsel rather than to spend the necessary time to accurately review the evidence of record.
 104 WEEKS NOT APPROPRIATE COMPENSATION FOR PLAINTIFF
Plaintiff also suggests that in order to provide compensation within the intent of the Act, the award of 104 weeks is necessary. Plaintiff's argument, however, fails to recognize that plaintiffs, who though they are not currently exposed to the hazards of asbestos and thus entitled to 104 weeks of benefits because of removal, are afforded relief for their diagnosed disease (assuming that they have a valid diagnosis)[11] under other statutory provisions. In fact, pursuant to § 97-64, a disabled plaintiff is entitled to recover benefits under §§ 97-29, 97-30, or97-31. Abernathy, supra; Clark, 141 N.C. App. at 428-429; see Honeycuttv. Carolina Asbestos Co., 235 N.C. 471, 70 S.E.2d 426 (1952) (entitled to ordinary compensation under the general provisions of the Act). The fallacy of plaintiff's argument was explained in Clark:
 . . . defendants also contend that "most importantly, the payment of one hundred four weeks of compensation is reserved to those employees who are actually removed
from their employment." (Emphasis added). This Court addressed the removal requirement in Moore v. Standard Mineral Co., 122 N.C. App. 375, 469 S.E.2d 594 (1996).
 [T]he term "removal" as used by G.S. § 97-61.5
presumed medical diagnosis will occur during the hazardous employment. Thus the language regarding "removal from the industry" has specific application only to occasions when . . . identified victims of occupational disease are thereafter "removed" from hazardous industry by a directive of the Commission. However, the phrase is inapposite to instances as that sub justice wherein a claimant is diagnosed at some point subsequent to leaving hazardous employment.
Id. at 378, 469 S.E.2d at 596. . . .
Clark 141 N.C. App. at 428-29. Although Moore and other decisions[12]
have questioned appropriate compensation for employees who are not entitled to removal, the Court, in Clark, explained that the Act, as amended, expressly provides workers' compensation benefits for employees who suffer from the occupational disease of asbestosis:
 The general rule for recovery for individuals suffering from asbestosis or asbestos-related disorders is found at N.C. Gen. Stat. § 97-64 (1991), which provides:
 Except as herein otherwise provided, in case of disablement or death from silicosis and/or asbestosis, compensation shall be payable in accordance with the provisions of the North Carolina Workers' Compensation Act.
Clark 141 N.C. App. at 428-29; see Abernathy, supra. Thus, because the Act does in fact provide benefits to disabled plaintiffs with asbestosis who are not currently exposed to the hazards of asbestos and consequently are not entitled to 104 weeks of benefits, and because there is no sound policy reason to extend the application of § 97-61.5 beyond its express and intended purpose, there is no basis to award § 97-61.5(b) benefits in this case.
The majority inappropriately cites Honeycutt v. Carolina Asbestos Co.,235 N.C. 471, 70 S.E.2d 426 (1952), for the proposition that the 104 weeks of compensation has the additional purpose to compensate the employee for the incurable nature of the disease. This finding arises from plaintiff's suggestion that the waiver provision of § 97-61.7
allows an employee to continue in his employment and at the same time receive the 104 weeks of benefits pursuant to § 97-61.5. Although § 97-61.7, and cases interpreting this provision,[13] have allowed employees to obtain the 104 weeks of benefits under § 97-61.5, our courts have held that § 97-61.7 applies only after an employee has been ordered removed and awarded compensation under § 97-61.5. SeeAustin, 141 N.C. App. at 416. Thus, § 97-61.7 does not remove plaintiff's burden to prove his entitlement to benefits under §97-61.5(b). Plaintiff's argument that Sections 97-61.5 and 97-61.7 are to be read together was rejected by the Supreme Court in Austin, which adopted the dissent of Judge Greene rather than the majority opinion of the Court of Appeals.
In the instant claim, plaintiff has not sought a waiver from removal from the Commission. In addition, plaintiff has not presented evidence to the Commission on the issue of whether the Commission should approve a waiver of further benefits and allow plaintiff to continue in hazardous employment. Therefore, a § 97-61.7 question is not properly before the Commission.
Moreover, the majority's citation to Honeycutt is not appropriate.Honeycutt is not a § 97-61.5(b) case and predates the enactment of this provision. Thus, the Supreme Court in Honeycutt did not award §97-61.5(b) benefits, or otherwise discuss § 97-61.5(b), an order of removal, the award of 104 weeks of benefits, the payment of benefits while continuing in current employment, or the payment of 104 weeks of benefits for the incurable nature of the disease. Rather, Honeycutt
supports the proposition that an employee with asbestosis is entitled to recover compensation under the general provisions of the Act (i.e.: §§ 97-29, -30, -31) as expressed in § 97-61.
 § 97-88.1 ATTORNEY'S FEES
Finally, the majority opinion finds that plaintiff's claim for attorney's fees for unfounded litigiousness pursuant to § 97-88.1
should be "held in abeyance." [Conclusion of Law No. 8.] If a ruling on this issue cannot be made at this time, then clearly there are and will be no grounds to assess attorney's fees. If it cannot be determined that the defense is unreasonable, then in fact the defense is patently reasonable as reasonableness is not determined in hindsight. Further, as noted above, this case includes numerous legal issues on which the parties, including defendant, have a right to a ruling by the Commission and subsequently by the Courts. Thus, plaintiff's claim for attorney's fees pursuant to § 97-88.1 must be denied. See Shaw v. United ParcelService, 116 N.C. App. 598, 449 S.E.2d 50 (1994), aff'd per Curiam,342 N.C. 189, 463 S.E.2d 78 (1995).
 CONCLUSION
For the foregoing reasons, plaintiff's claim for 104 weeks of benefits pursuant to § 97-61.5(b) must be denied. Therefore, I must respectfully dissent from the majority's opinion affirming the Deputy Commissioner's Opinion and Award.
 S/_______________ DIANNE C. SELLERS COMMISSIONER
DCS/gas
[1] The American Thoracic Society expressed that "[I]t is possible that interstitial fibrosis may be present even though none of these criteria [referring to items 3-6, above] are satisfied, but in our opinion, in these circumstances the clinical diagnosis cannot be made." Thus, a proper diagnosis, absent pathologic examination, requires proof of the first two criteria and at least 1 of the remaining criteria. TheDiagnosis of Nonmalignant Diseases Related to Asbestos, 134 AmericanReview of Respiratory Disease 363 (Adopted by American Lung Association, March 1986).
[2] In evidence are reports concerning chest x-rays which have been read by numerous physicians. Plaintiff's August 30, 1999 x-ray has been read by three B-readers selected by plaintiff and each of them report a 1/0 profusion rating with evidence of pleural plaques and COPD. Dr. Garland, the Commission selected panel physician, reported that this film evidenced pleural plaques consistent with asbestosis-related pleural disease, however, without diagnostic evidence of asbestosis. No physician interpreted the August 30, 1999 film to reveal a 1/1 profusion rating, which is the minimum required rating to support the diagnosis of asbestosis. On August 3, 2000, Dr. Dula, a physician selected by plaintiff, reported plaintiff's chest film to reveal normal interstitial tissue with no parenchymal abnormalities consistent with pneumoconiosis (asbestosis), however, with pleural plaques. Dr. Dula reported that he did "not see the focal interstitial changes of asbestosis" in interpreting a CT Scan taken on the same day. Consistent with Dr. Dula's findings, the radiologist at ECU who performed a CT Scan on October 27, 2000 at the request of Dr. Garland reported: "I do not see the focal interstitial changes of asbestosis." Subsequently, Dr. Dula read plaintiff's December 13, 2000 x-ray to reveal a 1/0 profusion rating with evidence of pleural plaques and COPD. Consistent with the other studies, this reading is below the minimum requirements for diagnosis established by the ATS standard. Dr. Garland requested another CT Scan in January 2001, and again, this study failed to reveal evidence of interstitial fibrosis.
The lone, aberrant study to report a 1/1 profusion level is not competent to support the diagnosis of asbestosis. Dr. Bernstein, a B-reader selected by plaintiff to review films, reported that plaintiff's April 1, 2000 study revealed a 1/1 profusion level. Dr. Bernstein also reviewed a prior, August 30, 1999, x-ray and interpreted that study to only reveal a 1/0 profusion level. At deposition, Dr. Bernstein testified that there were no significant differences in the two x-rays and that the difference in the profusion ratings could be due to the technique in taking the x-ray or his subjective read on a different date. Acknowledging that his read of the films was subjective and could change on different dates, Dr. Bernstein did not compare the two studies to determine which profusion level he felt was more reliable and accurate. Moreover, Dr. Bernstein testified that he had not seen any of the subsequent CT Scans and was not able to compare his interpretation of the 2000 x-ray to the Ct Scans that Dr. Dula, also selected by plaintiff, indicated did not show the interstitial changes of asbestosis. Dr. Bernstein agreed that the CT Scans are a better evaluation tool for making the diagnosis of asbestosis than the films that he used for the B-reads. The fact that no other radiologist has confirmed Dr. Bernstein's opinion that the 2000 x-ray revealed a 1/1 profusion level and subsequent CT Scans negate the presence of the interstitial fibrosis of asbestos undermines the validity of Dr. Bernstein's interpretation of this film.
[3] Under Rule 401 of the North Carolina Rules of Evidence, "relevant evidence" is defined as evidence that tends "to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." In other words, relevant evidence tends to establish that a contested fact is more, or less, likely.
[4] If this were a medical malpractice case, counsel would be successfully arguing that a doctor would malpractice to base his diagnosis on 1 radiology study when numerous other studies fail to confirm the findings of the lone study.
[5] The stipulation of the parties reads:
 "Plaintiff was last injuriously exposed to asbestos during Plaintiff's employment with Defendant-Employer Weyerhaeuser Company, and specifically, that the Plaintiff-Employee was exposed to asbestos for thirty (30) days within a seven month period, as required by N.C. Gen. Stat. § 97-57."
[6] Plaintiff also suggests that the stipulation of the parties also requires the Commission to enter an order of removal. The stipulation states: "The parties agreed further that should plaintiff be awarded compensation pursuant to N.C. Gen. Stat. § 97-61.5(b) the Deputy Commissioner may include language removing plaintiff from further exposure pursuant to N.C. Gen. Stat. § 97-61.5(b)." This stipulation is contingent on a finding that "plaintiff be awarded compensation pursuant to N.C. Gen. Stat. § 97-61.5(b)" and does not otherwise abrogate the requirements of the Commission to comply with § 97-61.5(b) of the Act.
[7] Unfortunately, the Full Commission paper and computer file only contains the deposition of Dr. Curseen, although other depositions are identified in the deputy commissioner's Opinion and Award.
[8] In other opinions adopting the "estoppel" argument, the majority has stated: "At the hearing before the Full Commission, counsel for plaintiff represented that plaintiff relied upon defendant's representations to him and his fellow employees that defendant's asbestos medical surveillance program would monitor his exposure to asbestos and would medically screen and monitor him for any signs of the development of asbestosis." Since the majority has reviewed my dissenting opinions, the more recent majority opinions, such as this case state: "Plaintiff may have relied upon defendant's representations to him and his fellow employees that defendant's asbestos medical surveillance program would monitor his exposure to asbestos and would medically screen and monitor him for any signs of development of asbestosis." Although the change in language removes the fact that the "finding" comes from argument of counsel, the findings of the majority are still based on an assumption, rather than evidence of record.
[9] In particular, the majority improperly finds in Finding of Fact No. 23: "Defendant convinced the State of North Carolina that defendant need not be included in the state Dusty Trades Program since defendant's asbestos medical surveillance served the same purpose."
[10] The Commission should be making decisions based on evidence not assumptions suggested by counsel.
[11] As discussed, infra, plaintiff does not have a valid diagnosis of asbestosis.
[12] Even, Judge Greene, in Austin, wrote:
 "I acknowledge the `removal' requirement of section 97-61.5(b) raises concerns regarding whether an employee who chooses to remove himself from employment prior to diagnosis of asbestos should be precluded from receiving 104 weeks of compensation under section 97-61.5(b). For example, this statute may encourage employees who are exposed to asbestos to remain in their employment until they receive a diagnosis of asbestosis. These concerns, however, should not be resolved by this Court; rather, the proper forum for addressing these concerns is in the Legislature."
Austin, 540 S.E.2d at 836. This inquiry, however, does not remove the requirement that the removal from hazardous employment must occur at the "directive of the Commission." Moore, 569 S.E.2d at 596.
[13] Section 97-61.7 provides that "[a]n employee who has been compensated" under § 97-61.5(b) as an alternative to forced change of occupation may, subject to approval of the Industrial Commission, waive further compensation and continue his employment. Plaintiff incorrectly relies on Bye v. Interstate Granite Company, 230 N.C. 334, 53 S.E.2d 274
(1949), which preexisted the current statutory provision for an order of removal, for the proposition that plaintiff may receive an order of removal and continue to maintain his employment. A careful reading of this case reveals that the Commission did not actually order plaintiff to be removed from his employment, but, advised plaintiff that he should seek new employment based on reports from his examining physician and based on plaintiff's age and long exposure and left the decision to leave his employment to plaintiff. Significantly, the Bye decision pre-dates the changes to the Act requiring the Commission to order removal, and in fact, no order of removal was entered by the Commission in that case, therefore, Bye does not support the proposition for which it is offered by plaintiff. Plaintiff also cites Roberts v. Southeastern Magnesia Asbestos Co., 61 N.C. App. 706, 301 S.E.2d 742 (1983) for the proposition that the Commission can order plaintiff to "refrain from exposing himself to the hazards of employment" and receive 104 weeks of benefits without leaving his employment. Contrary to the suggestion of plaintiff, however, the Roberts decision stands for the proposition that a plaintiff is entitled to compensation for his removal from employment exposing plaintiff to the hazards of asbestos as an incentive to force change in occupation, or provide a "safety net", without requiring plaintiff to prove an incapacity to earn wages due to his disease.61 N.C. App. at 709. In Roberts, there was no evidence that plaintiff continued to be exposed to asbestos after his removal was ordered. The critical evidence was that plaintiff was the president of defendant-employer, that he was daily exposed to asbestos before the order of removal, regardless of the fact that defendant-employer was phasing out its use of asbestos.
Plaintiff also inappropriately relies on Honeycutt v. Carolina AsbestosCo., 235 N.C. 471, 70 S.E.2d 426 (1952). Honeycutt is not a §97-61.5(b) case, and predates the current statutory provisions. InHoneycutt, plaintiff was diagnosed with asbestosis at which time his dusty trades card was revoked and the recommendation was made for plaintiff to obtain new employment. Plaintiff found new employment as a police officer where he earned greater wages. The issue was whether plaintiff had "disability" because he had no loss of wage earning capacity. The Supreme Court explained the difference between "disablement" applicable to asbestosis and silicosis cases and "disability" for all other injuries/diseases and held that "disablement" under § 97-54 is not the same as "disability" under § 97-2. The Supreme Court explained that for asbestosis/silicosis cases "disablement" means "the event of becoming actually incapacitated from performing normal labor in the last occupation in which [plaintiff was] remuneratively employed." In Honeycutt the Supreme Court did not approve benefits under §§ 97-61.5(b) or 97-61.7. There is no mention of an order of removal or 104 weeks in this case. Rather, the Supreme Court held that plaintiff "would be entitled to ordinary compensation under the general provisions of our Workmen's Compensation Act. G.S. § 97-61;Young v. Whitehall Co., 229 N.C. 360, 49 S.E.2d 797" (1948).